IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMISON L. SEMLA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 3:03-cv-015-JPG |
| | ) |
| DONALD SNYDER, et al., | ) |
| | ) |
|     Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion to Dismiss filed by the defendants, Donald Snyder and Guy Pierce on, October 4, 2004 (Doc. 21). For the reasons set forth below, it is **RECOMMENDED** that the Motion to Dismiss be **DENIED IN PART** and **GRANTED IN PART** and that the court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The plaintiff, Jamison Semla, filed a Petition for Injunction (hereinafter referred to as Complaint) on February 8, 2003.  (Doc.1) [1] Semla was an inmate at the Lawrence Correctional

---

[1] Semla filed an amended complaint on July 16, 2004. ( Doc. 40)    Semla incorporates his original complaint into his amended complaint. (Doc. 40, p. 3)  In his amended complaint Semla deletes a reference in his original complaint to the Religious Restoration Act because it was repealed in 1997 and has substituted the Religious Land Use and Institutionalized Persons Act. (Doc. 40, p. 1)
    This Court is aware that Semla's amended complaint was filed after the defendants filed their motion to dismiss.  Normally an amended complaint would moot pending motions to dismiss; however, the motion to dismiss applies equally to the amended complaint and the

Center.  (Doc. 1).  Semla alleges a violation of his First Amendment right to practice his religion and a violation of the Religious Land Use and Institutionalized Persons Act,  42 U.S.C. § 2000cc (hereinafter referred to as RLUIPA).  Semla is seeking a declaratory judgment that the defendants have violated his rights, a preliminary and permanent injunction to have defendants accommodate his religious tenet and practices by allowing him to receive the religious materials that he alleges were unjustly confiscated, costs of prosecuting the lawsuit, and attorney's fees.  Semla's complaint sues the defendants in their individual and official capacities.

Semla specifically alleges that on July 9, 2002 at 2 p.m., while he was at his assigned job in the laundry, Lt. Jennings, a defendant,  participated in a "cell shakedown" and confiscated 8 books which were considered to be "contraband".  (Doc. 1, p 1, Exhibit 1; Doc. 40, p. 3).  Semla alleges that these books are necessary for him to practice his religion.   He further alleges that no disciplinary or incident report was written  (Doc. 1, Exhibit 1) and  no inquiry was conducted into the validity of Semla's religious beliefs.  (Doc. 1, p. 1).

Semla's complaint alleges that he is a Satanist.  (Doc. 1, Exhibit 11 and 22; Doc. 40, p. 2 and 4 ).  He alleges that while he was incarcerated at the Stateville Correctional Center prior to being transferred to the Lawrence Correctional Center, he was questioned in depth by Chaplin Cohn, the Chaplin at Stateville Correctional Center,  for the purpose of qualifying him as an earnest Satanist.(Doc. 1, p. 2)   He alleges the books that were seized by Lt. Jennings were obtained by him while he was  incarcerated in Stateville and had been subjected to review by the appropriate committees. (Doc. 1, p. 2; Doc. 40, p. 2)   He further alleges that when he was transferred to Lawrence, the books were also transferred and reviewed at that time (Doc. 1, p. 2;

---

defendants cite to the amended complaint in their motion to dismiss. (Doc. 38)

Doc. 40, p. 2) and that five months later, Lt. Jennings seized them as contraband.(Doc. 40, p. 2 and 3)  He alleges that the Illinois Department of Corrections recognizes him as being a Satanist (Doc. 40, p. 2) and the back of his prisoner identification card lists his religion as Satanism.(Doc. 1, p. 2, Exhibit 11, 22; Doc. 40, Exhibit 11 (c))   He alleges that there are no formal religious services for his religion and that his only means of practicing his religion is by self-study with the books that were seized.  (Doc. 1, p. 4 and 7, Exhibit 2)   Semla alleges that because he has never attempted to obtain rituals or services in order for him to practice his religion  (Doc. 1, p. 7) and because all of his religious materials were seized,  that he is unable to study or practice his religion.  (Doc. 1, p. 4 and 7, Exhibit 2)

     Semla filed a grievance on July 9, 2003,  the day his books were seized.  (Doc. 1, Exhibit 2; Doc. 40, p. 3).  In his grievance Semla alleges that his right to religious freedom was being denied and that he was being discriminated against due to his religious beliefs.  (Doc. 1, Exhibit 2).  Counselor Everbaugh's response to Semla's grievance, dated July 31, 2002, informed him that according to the Chaplin, 1 book was returned, 3 books were not allowed in the institution, and 3 books were at the publication review committee.  (Doc. 1, Exhibit 2).  The response did not inform Semla why 3 of the books were not allowed.  The counselor did not inform Semla which books were not allowed or which books were at the review committee.

     Semla then wrote a request to Personal Property/Ms. Lynch, on August 11, 2002, asking if they had his books. (Doc. 1, Exhibit 5)   On August 12, 2002, Semla alleges that he wrote to the Grievance Officer at Lawrence Correctional Center  (Doc. 1, Exhibit 4) and he informed him that the findings of the counselor were inaccurate.  He wrote that none of the books were returned to him, he did not receive any paperwork stating  that 3 books were not

allowed in the institution, and that he has not heard anything regarding the 3 books that were under review. (Doc. 1, Exhibit 4). On August 14, 2002, Semla alleges that he received a memo from the personal property department, through Ms. Lynch. (Doc. 1, Exhibit 5) She informed him that all books had been sent to publication review. The memo also stated that when the books were returned to personal property, Semla would be notified. (Doc. 1, Exhibit 5) On August 22, 2002, Semla alleges that he received a report from grievance officer Murray stating that his grievance was denied because the proper procedures had been followed concerning publication review. (Doc. 1, Exhibit 6).

Semla alleges that on September 11, 2002, he sent 3 of his books home because they were denied by publication review. (Doc. 1, Exhibit 10a). The books were *Necronomicon, Satanic Bible,* and *Satanic Rituals.* He alleges then on September 16, 2002, he wrote to the Director of the Administrative Review Board (defendant Donald Snyder) and attached a copy of his grievance. (Doc. 1, Exhibit 7) Semla informed the director that his First Amendment right to freedom of religion had been denied. He also stated that his grievance was not properly investigated because the investigation should have been extended to the Chaplin of the institution to verify the sincerity of his religious beliefs. Semla also claims that his religious affiliation should have been verified through Illinois Department of Corrections records. (Doc. 1, Exhibit 7) He also states that a formal hearing was never conducted to allow him to show his sincerity regarding his religion. It appears from the file that this letter was never answered. On September 17, 2002, Semla received a memo from Sharon McCorkle, Chairperson of the Publication Review Committee, stating that the following publications were at the Central Publication Review Committee in Springfield: *In the Name of Satan, Magick for Beginners,* and

*Satan's High Priest*.  (Doc. 1, Exhibit 3)  The memo further informed Semla that when a decision on the above-mentioned books was made, he would be notified.  (Doc. 1, Exhibit 3).  On September 19, 2002, Semla alleges that he requested an interview with Sharon McCorkle of the publication review committee.  (Doc. 1 Exhibit 8)   In his request, Semla informed McCorkle that he was told that 7 books were in Springfield being reviewed and requests the whereabouts of an 8th book, *Satan Speaks*.  On September 24, 2002, McCorkle responded that *Satan's High Priest, Magick for Beginners,* and *In the Name of Satan* were in Springfield.  She was holding *Satan Speaks* because Springfield already had a copy that book.  (Doc. 1, Exhibit 8).  McCorkle informed Semla that he would be notified as soon as possible.  (Doc. 1, Exhibit 8)

On October 17, 2002, Semla received a decision on his grievance.  (Doc. 1, Exhibit 9) The letter stated that grievance officer Murray's and  Chief Administrative Officer  Pierce's recommendations had been reviewed and the Administrative Review Board found that the institutional administration was properly handling his grievance, therefore, his grievance was denied.  This document was signed by Leora Harry, Administrative Review Board, Office of Inmate Issues and Donald Snyder, Director.  (Doc.1, Exhibit 9)   On November 27, 2002, Semla sent two other books home because he alleges that  they were denied by the publication review committee.  (Doc. 1, Exhibit 10b).  The books were *In the Name of Satan* and *Satan's High Priest.*

Semla further alleges that the Federal Bureau of Prisons approves the books that were seized from him and that the Illinois Department of Corrections adheres to the Federal Bureau of Prison's policy. (Doc. 40, p. 3)

In District Judge Gilbert's preliminary review of Semla's complaint, he determined that

Semla's complaint was not subject to summary dismissal at the time of his review. (Doc. 7, p. 2) He further construed Semla's argument regarding the Religious Restoration Act, which has been repealed, as an argument under the Religious Land Use and Institutionalized Persons Act (RLUIPA) pursuant to 42 U.S.C. § 2000cc. (Doc. 7, p. 2)

### CONCLUSIONS OF LAW

Defendants Pierce and Snyder are seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. In considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of plaintiff. Jet, Inc. v. Shell Oil, Co., 381 F.3d 627, 629 (7th Cir. 2004) (discussing a Rule 12(b)(6) motion to dismiss). A complaint can only be dismissed if "there is no possible interpretation of the complaint under which it can state a claim." Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 981 (7th Cir. 2004).

### INDIVIDUAL CAPACITY

The defendants argue that neither Pierce nor Snyder can be sued in their individual capacities because neither defendant personally seized Semla's books. They argue that they merely concurred with the grievance officer's recommendation that Semla's grievance be denied, and because neither defendant made the decision as to what books Semla could keep and which books were not allowed. The defendants argue that supervisors are not liable under §1983 unless they have personal involvement in a constitutional deprivation, i.e., that they either directed or consented to the conduct. They further state that if a supervisor is merely negligent in failing to detect misconduct, he is not liable. Further, they argue that written notification, by

itself, is insufficient to impose liability on a defendant under §1983.

The defendants are correct in stating that Semla must allege personal conduct on the part of defendants Pierce and Snyder in order to assert a claim against them for money damages pursuant to §1983 in their individual capacity.  See e.g. Wynn v. Southward, 251 F.3d 588, 592 (7th Cir. 2001).   Semla must allege that each defendant was personally involved in the decision to deny him the right to practice his religion. See e.g. Wynnv. Southward, 251 F.3d 588, 592 (7th Cir. 2001).  Semla  is suing defendants Pierce and Snyder in their individual capacities.  Semla's complaint alleges that they reviewed his grievances and did not give him any relief.  Additionally, Semla complaint alleges multiple times that he is without any means to practice his religion and that his rights under the First Amendment have been violated.  Furthermore, Semla's complaint  makes it abundantly clear that defendants Pierce and Snyder are being sued in their individual capacities.  It is clear that he is asserting that defendants Pierce and Snyder were personally involved in the decision to deny him access to his religious material and that the books that were seized were the only means he had to practice his religion.

The Seventh Circuit has held that the director of a state prison had enough personal involvement when he approved a disciplinary ticket that was not justified and had been issued by his subordinates.  See Black v. Lane, 22 F.3d 1395, 1401 (7th Cir. 1994).  The director was also "presumed to have knowledge of . . . the unlawful practices at [the prison]."  Id (citing Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985).

Both Pierce and Snyder had the direct responsibility to review and respond to grievances. Denying a grievance can, in fact, be construed as giving "express consent" to the continuation of the conditions complained of in the grievance.  The Illinois Administrative Code sets forth the

grievance procedures for inmates and the appeals process. Specifically, the director is to review the grievance and the response to the grievance by the grievance officer and the chief administrative officer. The director shall determine if the grievance requires a hearing before the administrative review board. If the grievance is without merit or can be resolved without a hearing, the inmate shall be advised of the disposition of his appeal in writing. 20 Il. Admin. Code §504.802; 20 Ill. Admin. Code § 504.850. The Illinois Administrative Code gives both the warden and the director personal responsibility when they review grievances. It would not be unreasonable for Semla to believe that the warden and director actually review the grievance before signing it. The United States Constitution and Illinois law obligate Pierce and Snyder to evaluate a grievance and appeal, not to just rubber stamp it and sign it. They are not entitled to qualified immunity. For this reason it is the RECOMMENDATION of this Court that Semla's claims with respect to defendants Pierce and Snyder, in their individual capacity, cannot be dismissed.

**OFFICIAL CAPACITY**

The defendants argue that they are not subject to an official capacity claim because defendant Pierce is no longer employed as the warden at Lawrence and defendant Snyder is no longer employed as the director of the Illinois Department of Corrections and Semla seeks injunctive relief.

A suit against an individual in his official capacity is a suit against the state. See Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Semla has acknowledged that Roger Walker, Jr. is now the director of the Illinois Department of Correction and that Jason Garnett is now the warden and chief administrative officer at Lawrence. Semla is a pro-se litigant. As

such, his pleadings must be liberally construed. The Court construes Semla's amended complaint as adding Roger Walker, Jr. and Jason Garnett as defendants. The Court will substitute Walker and Garnett as the defendants being sued in their official capacity. Therefore, Semla's official capacity suit seeking injunctive relief can proceed.

The Eleventh Amendment bars suits for money damages against state officials in their official capacities. See Brown v. Budz, 398 F.3d 904, 918 (7th Cir. 2005). However, Semla can sue state officials in their official capacity to enjoin perspective action that violate's federal law pursuant to §1983. See See Brown, 398 F.3d at 917; Williams, 336 F.3d at 581. Semla has failed to state a claim against Pierce and Snyder in their official capacity. See Williams,336 F.3d at 580-581; Perkins v.Lawson,, 312 F.3d 872, 875(7th Cir. 2002). However, he can seek injunctive relief against Walker and Garnett in their official capacity. Therefore, it is the RECOMMENDATION of this Court that Semla's claims with respect to defendants Pierce and Snyder in their official capacity be DISMISSED WITH PREJUDICE. However, the suit is not dismissed against Walker and Garnett in their official capacity. It is further RECOMMENDED that Walker and Garnett are SUBSTITUTED as defendants in their official capacity.

### QUALIFIED IMMUNITY

The defendants argue that they are entitled to qualified immunity because there is no constitutional right to copies of specific books. Semla argues that the books are necessary to practice his religion, that the books are his only means to practice his religion, and the denial impinges upon his First Amendment rights.

Qualified immunity should only be granted if the officials conduct does not violate any clearly established statutory or constitutional right which a reasonable person would

have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818(1982).  The parameters of the right must be sufficiently clear so that a reasonable official would understand that his action violates that right.  Anderson v.Creighton, 483 U.S. 635, 640(1987).  In order to decide whether a defendant is entitled to qualified immunity, the Court takes the facts in the light most favorable to the plaintiff and determines whether a constitutional right was violated.  If the facts demonstrate a violation, the Court must decide whether the right in question was clearly established at the time the events took place.  Saucier v. Katz, 533 U.S. 194, 200(2001). The Court does not find defendants' assertion that they are entitled to qualified immunity to be well taken.

It is well-established that prisoners must be accorded "reasonable opportunities" to exercise their First Amendment right to religious freedom.  Cruz v. Beto, 405 U.S. 319, 322 (1972)   When a prison rule impinges on an inmate's Constitutional rights, the restriction is valid if it is reasonably related to legitimate penological interest.  Turner v. Safely, 482 U.S. 78, 89 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 353(1987).   Four criteria are considered in deciding whether a rule has a legitimate purpose.  First, there must be a valid, rational connection between the rule and a legitimate governmental interest.  Second, the prisoner must have available alternative means of exercising the right in question.  Third, efforts to accommodate the right must have a negative effect on guards, inmates, or prison resources.  Finally, the rule may not be reasonable if there are obvious, easy alternatives available at minimal cost.  Turner, 482 U.S. at 89-90.

In addition, the RLUIPA, 42 U.S.C. § 2000cc-1, forbids prisons that receive federal funding to burden a prisoner's exercise of his religion substantially unless the prison has a compelling interest and employs the least restrictive means possible for protecting that interest.

In other words, the statute requires a plaintiff to establish that the challenged restriction creates a substantial burden on the exercise of his religious beliefs.  If he succeeds, the burden shifts to the defendants to show that the restriction furthers a compelling state interest by the least restrictive means.  Charles v. Verhagen, 348 F.3d 601(7th Cir. 2003).  "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for the exercise of their religion."  Cutter v. Wilkinson, 125 S. Ct. 2113, 2122(2005).

      Semla alleges that at the time his books were seized and not returned  that he had a clearly established right under the First Amendment to have a reasonable opportunity to  practice his religion.  Semla also claims that he now has no means or reasonable opportunity to  practice his religion.   It is abundantly clear from Semla's complaint, the exhibits, and his amended complaint that his argument is that his First Amendment right to practice his religion was violated and his right to free exercise of religion under the RLUPIA was violated.   Defendants have  failed to address those issues.

      While the defendants state that they are entitled to qualified immunity, they have presented no argument supporting the claim.  They have also presented no evidence to dispute Semla's allegations and have not sought summary judgment on this issue.  The burden in on the defendants to show that they are entitled to qualified immunity.  Even though the issue of qualified immunity must be resolved as soon as practicable, the defendants' brief statement in the conclusion of their memorandum regarding the issues provides no basis for this Court to find that they are entitled to qualified immunity.  This is the defendants' motion and the failure to fully brief an issue can only be to their detriment.  As all facts are taken in the light most

favorable to the plaintiff, at this state of the proceedings, dismissal should not be entered based on qualified immunity.

For the reasons set forth above, it is the **RECOMMENDATION** of this Court that defendants' Pierce and Snyders motion to dismiss is **DENIED IN PART** and **GRANTED IN PART,** that Pierce and Snyder be dismissed in their official capacity, defendants Walker and Garnett are substituted as defendants in their official capacity, and that the District Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 22, 2005.**

>   **s/ Donald G. Wilkerson**
>   **DONALD G. WILKERSON**
>   **United States Magistrate Judge**