IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMISON L. SEMLA,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        Case No.  3:03-cv-15-JPG
                                     )
DONALD N. SNYDER, et al.,            )
                                     )
        Defendants.                  )


**REPORT AND RECOMMENDATION**

This matter has been referred to the Magistrate Judge Donald G. Wilkerson by  United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the defendants, Donald N. Snyder, Guy D. Pierce and Lieutenant Jennings, filed on May 2, 2005 (Doc. 31) and the Supplemental Motion for Summary Judgment[1] filed by the defendants, Donald N. Snyder, Guy D. Pierce and Lieutenant Jennings, filed on August 31, 2005 (Doc. 47).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment  be **DENIED IN PART** and **GRANTED IN PART** and that the court adopt the following findings of fact and conclusions of law:

FINDINGS OF FACT

The plaintiff, Jamison Semla (Semla), filed a Petition for Injunction (hereinafter referred to as the Complaint) on February 8, 2003 (Doc. 1).   On July 16, 2004, Semla filed an Amended

---

[1] The Court is considering the defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment concurrently with the Supplemental Motion for Summary Judgment which includes, and expands on, the three issues raised in the Motion for Summary Judgment.

Verified Complaint (Doc. 40).   Semla alleges a violation of his 1st Amendment right to practice

his religion and a violation of the Religious Land Use and Institutionalized Persons Act

(hereinafter RLUIPA).

Semla entered the Illinois Department of Correction (hereinafter IDOC)  in June of 2000

(Doc. 32, Exhibit 3, page 5).    Semla is a member of the Satanic Faith (Doc. 32, Exhibit 3, p.

24).   The books that are necessary for him to practice  his religion are *The Satanic Bible, Satanic*

*Rituals, and Satan Speaks.* (Doc. 32, Exhibit 3, p. 27-28).   Semla received the books in question,

namely *The Satanic Bible, Satanic Rituals,* and *Satan Speaks*, while he was incarcerated in

Stateville (Doc. 32, Exhibit 4, p.42 - 44).  After he received the books, they were sent to the

appropriate review committee at Stateville (Id. at 44).   The books were returned to him stamped

approved by the institutional publication committee at Stateville (Id. at 42, 43).[2]

Semla was transferred from Stateville to Lawrence Correctional Center on February 7,

2002 (Doc. 40, p. 3).    At that time, his property, including his religious materials, (the 3 books

subject to the lawsuit)  were inventoried and approved for him to possess (Doc. 40, p. 3).   Semla

completed a Religious Declaration for Orientation of Inmates at the Lawrence Correctional

Center (Doc. 40, p. 6).  On this form, Semla stated his religious affiliation was the Church of

Satan, Satanist (Doc. 40, p. 6).  The United States Bureau of Prisons (hereinafter BOP) allows

inmates to possess these publications and the IDOC adheres to the policy of the BOP  (Doc. 40,

p. 3).

On July 9, 2002, some six months later, while  Semla was still at Lawrence Correctional

---

[2] The institutional publication review committees  have a master sheet that comes from
Central Publication Review of what publications are approved and denied (Id. at 42-43).  Each
list comes from Springfield, Illinois (Id. at 44).

Center,  Lt. Jennings conducted a shake-down of Semla's cell and confiscated 8 books [3] (Doc. 32, Exhibit 3, p. 33).  Semla was not in his cell when the shake-down occurred (Id.).  Lt. Jennings did not make an effort to determine  whether the books he seized were religious publications (Id.)  Jennings did not contact Semla and ask him about the books, nor did he contact the Chaplin or look in the Offender Tracking System (OTS), which would have indicated Semla's religion (Id.).   Semla's IDOC Identification Card designates Semla as a member of the Satanic Faith (Doc. 40, p. 2).  Semla had these same books at three previous institution without problem (Doc. 32, Exhibit 3, p 21, 22).  He possessed these books for the 6 months at Lawrence without incident (Id.).   Semla filed a grievance on July 9, 2002 regarding the confiscation of his books (Doc. 1, p. 10 -11).  In his grievance, Semla indicated that he was a Satanist and that the confiscated books were the only means he had to practice his religion and without his books he could no longer study or practice his religion (Doc. 1 , p. 10-11).  Semla pursued a grievance regarding the removal of his books all the way through the Administrative Review Board (Doc. 1 p. , 10 - 19).

On January 8, 2003 Semla filed his Complaint, entitled "Petition for Injunction." (Doc. 1).  In his Complaint, Semla named Donald Snyder, Guy Pierce, and Lt. Jennings as defendants (Id.).  Semla filed an Verified Amended Complaint on July 16, 2004 incorporating his original Complaint (Doc. 40, p. 3).   Semla sought a declaratory judgment that the defendants violated his rights, a preliminary and permanent injunction to have defendants accommodate his religious tenet and practices by allowing him to receive the religious materials that were confiscated, costs of prosecuting the lawsuit,  and attorney's fees (Doc. 1, Doc. 40).

---

[3] Only the three books noted *supra* are the subject of the lawsuit.

## CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals a good faith dispute as to inferences to be drawn from those facts. Plair v. E.J. Brach & Sons, Incorporated, 105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994). See also Miller, 168 F.3d at 312; Plair, 105 F.3d at 347; Cf. Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial Court must determine whether the

4

evidence presented by the party opposed to the summary judgment is such that a reasonable jury

might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining
> whether there is the need for a trial--whether, in other words, there
> are any genuine factual issues that properly can be resolved only
> by a finder of fact because they may reasonably be resolved in
> favor of either party.

> [T]his standard mirrors the standard for a directed verdict under
> Federal Rule of Civil Procedure 50(a), which is that the trial judge
> must direct a verdict if, under the governing law, there can be but
> one reasonable conclusion as to the verdict.

> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct.
> 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also*: Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91

L.Ed.2d 265, 273 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v.

Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v.

State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that Semla has failed to exhaust his administrative remedies because

the defendants argue that Semla is really challenging the decision of the Publication Review

Committee and Semla did not file any grievances regarding the action of Publication Review

Committee.  Therefore, they argue Semla has failed to exhaust his administrative remedies.

The Prison Reform Litigation Act of 1996, states:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal Law, by a prisoner confined in any
> jail, prison, or other correctional facility until such
> administrative remedies as are available are
> exhausted.

42 U.S.C. §1997(e).

Exhausting available administrative remedies is necessary before filing suit.  Dale v. Lappin, 376 F. 3d 652, 655 (7th Circuit 2004).   If a plaintiff has failed to exhaust his administrative remedies, then the defendants do not have to defend the lawsuit on its merits.  It is necessary to exhaust administrative remedies even if the relief requested, i.e., monetary damages, is one that the administrative review board has no power to grant.  Dole v. Chandler, 2006 WL 435418 * 4 (7th Cir. 2006).   The Supreme Court has noted that a prisoner might be satisfied if corrective action is taken in response to a grievance, thereby, preventing the need for the lawsuit, or prison authorities might be notified of an ongoing  problem which they can correct.  Id. (citing Porter v. Nussle, 534 U.S. 516, 524-25 (2002)).  Exhaustion of Administrative Remedies is an affirmative defense with the burden of proof on the defendants Id. (citing Dale, 376 F. 3d at 656).

The procedures that are required by an inmate in the Illinois Department of Corrections to exhaust administrative remedies are found in Title 20 of the Illinois Administrative Code at sections 504.800 through 504.870.  First, informal resolution through a Counselor is required.  Ill. Admin.Code tit. 20, §504.810(a) (2005).   If the problem is not resolved through the Counselor, the inmate then may file a written grievance within 60 days of the occurrence which is dealt with by a Grievance Officer on a weekly basis.  Id.at §504.810(a).  The Grievance Officer then either denies the grievance and returns the documents to the inmate, or submits the grievance for investigation, reporting the findings to the Chief Administrative Officer (CAO).  Id. at §504.830(d).  The CAO is then, generally, to provide a response within 2 months of receipt of the grievance.  Id. at 504.830(d).  If the issue has not been resolved to the satisfaction of the inmate, it then may be appealed to the Director within 30 days of receiving a response from the

CAO.  Id. at 504.850(a).

Semla provided documentation attached to his Complaint that he exhausted his administrative remedies with regard to the confiscation of his books.  Semla also testified at his deposition that he exhausted his administrative remedies (Doc. 32, p 7,9 - 12, 14-15 ). Additionally, Semla testified at his deposition that he is suing the three named defendants over the confiscation of the three books (Doc. 32, Exhibit 3, p. 13, 32).   Lt. Jennings admits in his Answer to Semla's Verified Amended Complaint, that Semla exhausted his administrative remedies regarding the confiscation of the books in question (Doc. 41, p. 4).

The same day that his books were seized, Semla filed a grievance (Doc. 1, p. 10-11). Semla stated in his grievance that books were seized (Doc. 1, p. 10).  The items that were seized had been received by him through the IDOC, including Lawrence (Id.).  He stated in the grievance that his religious affiliation is Satanist (Id.).  He said he had no services available to him and therefore he had to practice his beliefs on a solitary basis (Id., p. 11).  He stated that he could not practice or study his religion because all of his religious material was confiscated (Id., p 11).  The grievance counselor responded on July 31, 2002 (Doc. 1, p. 10).  On August 12, 2002,  Semla then sent a grievance along with a  letter to the grievance officer indicating the counselor's findings were inaccurate (Doc. 1, p. 13).   On August 22, 2002, the grievance officer recommended that Semla's grievance be denied (Doc. 1, p. 15).  The Chief Administrative Officer concurred (Id.).   On September 16, 2002, Semla sent his grievance along with a letter to the Director of the Administrative Review Board regarding his 1st Amendment rights (Doc. 1, p. 16).  In his letter, Semla requested a formal hearing.  (Id.).   On October 17, 2002 The Administrative Review Board recommended that the grievance be denied (Doc. 1, p. 19).  This

decision was concurred with by Donald N. Snyder, Director (Id).[4]

The burden of proof is on the defendants.  The defendants have not met their burden.
The defendants argue that Semla did not did not file any grievances regarding the action of
Publication Review Committee so therefore, they argue he failed to exhaust his administrative
remedies.  The only evidence before this Court is that Semla did in fact exhaust his
administrative remedies regarding the three defendants he sued on the issue of his confiscated
books.  He completed the grievance procedure set up by the state.   It is irrelevant to the Court's
determination of whether Semla exhausted his administrative remedies against individuals he did
not sue.  Defendants cannot meet their burden by claiming Semla is not suing the people they
believe he should have sued.   For the foregoing reasons, this Court cannot recommend that
summary judgement be granted for the defendants on the issue of failure to exhaust
administrative remedies.

## 1ST AMENDMENT VIOLATION

The defendants argue in their Supplemental Motion for Summary Judgment[5] that Semla's
rights under the 1st Amendment were not violated because defendants did not burden Semla's
right to practice his religion in a significant way.  Defendant's argue that because Semla was
allowed to keep another Satanic religious publication, *Satan's High Witch or The Satanic Witch*,
he had access to religious material.  Defendants state that Semla has a general idea of what he
can and cannot due consistent with his religion.  Defendants further cite to several cases where a

---

[4]Melody J. Ford, Administrative Review Board Chairperson, signed the letter on behalf
of Donald N. Snyder, as his designee (Doc. 48, p. 3).

[5]Defendants did not raise the first amendment claim in their original Motion for
Summary Judgment, however, they have raised it in their Supplemental Motions for Summary
Judgment.

prison prohibited the *Satanic Bible* or the *Satanic Book of Rituals*.

It is well established that prisoners must be accorded "reasonable opportunities" to exercise their First Amendment right to religious freedom.  Cruz v. Beto, 405 U.S. 319 (1972).  When a prison rule impinges on an inmate's Constitutional rights, the restriction is valid if it is reasonably related to legitimate penological interests.  Turner v. Safely, 482 U.S. 78, 89-90 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987).   Four criteria are considered in deciding whether a rule has a legitimate penological purpose.  First, there must be a valid, rational connection between the rule and a legitimate governmental interest.  Second, the prisoner must have available alternative means of exercising the right in question.  Third, efforts to accommodate the right must have a negative effect on guards, inmates, or prison resources.  Finally, the rule may not be reasonable if there are obvious, easy alternatives available at minimal cost.  Id.  The Supreme Court adopted a reasonableness standard to permit prison administrators to anticipate and adopt innovative solutions to the challenges faced by prison administrators.  Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991).  "Prisons cannot discriminate against a particular religion."  Id. at 686.  "The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger more traditional denominations."  Id.

Although defendants point to cases in other circuits where court's have upheld denial of the possession of the *Satanic Bible*, those cases are distinguishable.   In McCorkle v. Johnson. 881 F.2d 993 (11th Cir. 1989) testimony was adduced that the plaintiff held an extreme view on Satanism that called for human sacrifice, drinking of blood, wrist slashing and consuming the flesh of humans while they were still alive.  Id. at 995.  The plaintiff also wanted to possess

candles made from the fat of unbaptized infants.  Id.  The Court in that case also had before it

testimony of prison officials explaining why the policy of denying access to Satanic books,

articles and medallions was reasonably related to legitimate penological interests.    In Carpenter

v. Wilkinson, 946 F. Supp. 552 (N.D. Ohio 1996) the plaintiff sought permission to obtain and

keep the Satanic Bible.  The defendants did not recognize Satanism as a religion and produced

evidence that the book was inflammatory.

 In Semla's case, the IDOC recognizes Satanism as a religion and had given Semla

permission to possess the books.  Semla does not hold the extreme position on Satanism as the

plaintiff did in McCorkle.  Semla testified that Satanism in not about devil worshiping (Doc. 32,

Exhibit 3, p. 36).  He does not pray to the devil, he prays to himself (Id. ).  He pays homage to

the equinox and the solstice and cannot do so because he does not have the words and phrases

contained in the books (Id. at 37, 38).  His religion is not about human sacrifice and murder (Id.

at 39).  Semla did not want to involve others in his self-study and was not attempting to perform

rituals with candles, robes, medallions or anything else that he was not allowed to possess (Doc.

32, Exhibit 3, p. 37).  Semla testified in his deposition that the destruction ritual is not literal, it is

a metaphor (Doc. 32, Exhibit 4, p. 40).  He could not place a curse because he cannot possess the

items needed for that ritual (Id.).  The Black Mass referred to in the *Satanic Rituals* is a way

protesting issues that could be protested like political debates or war (Id. at 41).  Most of his

faith deals with the way you live your life and conduct yourself around the ones you love and in

public (Id. at 48-49).  Satanists have laws and sins all of which are contained in the publications

that were seized.  (Id.).

 In Howard v. U.S.A., 864 F. Supp. 1019 (D. Col.1994) the Court agreed with the

plaintiff that the Bureau of Prisons allow him space, time and implements to perform his Satanic rituals of Compassion, Destruction, and Personal once a month for approximately one hour.  The plaintiff was allowed to possess the *Satanic Bible* and *Satanic Rituals*.  The court found that Howard's description of what his religion means to him and his conception of his religion was totally different from the extreme position of the plaintiff in McCorkle.  Id. at 1022, 1026 - 1027).  See also, Patrick K.A. Elkins, The Devil You Know!: Should Prisoners Have the Right to Practice Satanism?  41 HOUS. L. REV. 613, 639-643 (Summer 2004) (McCorkle and other cases represent a misreading and misunderstanding of the *Satanic Bible* despite the express statements by the founder of Satanism that certain language is only symbolic).

Defendants have not addressed the four factors set out in Turner, nor is there any evidence in the record that they even considered those factors.   The Court cannot and will not attempt to supply reasons for the defendants.  Defendants argue that they have not burdened Semla's religion.  Defendants offer no evidence to counter the fact that Semla was allowed to have these books at four different institutions or that the appropriate reviewing committee at Stateville approved these books.  In this case there is no evidence before the Court as to why Semla's books were seized.   Defendants fail to even offer an explanation as to why Semla's books were seized.   Without evidence rebutting Semla's claim,  this Court will not grant defendants motion.   Further,  Defendants have offered no legitimate penological interest.   They point to nothing that indicates that honoring Semla's religion would interfere with any legitimate penological objectives.  This Court is not required to find as persuasive what another court found as persuasive (i.e., McCorkle), especially when there is no evidence before the Court.   A conclusory statement that safety and security are at stake is not enough.   Defendants have not

stated a reason or rationale for seizing Semla's books.   Defendants have presented no evidence suggesting that Semla had other opportunities to exercise his religious beliefs.   In fact, Semla's grievance and his deposition testimony clearly establish that he had no means to practice his religion after his books were seized.

In his deposition, on March 14, 2005, Semla testified that he now possesses *Satan's High Witch* or *The Satanic Witch*  (Doc. 32, Exhibit 3, p. 36).  There is no evidence in the record that Semla possessed this book in July 2002.   Semla's deposition establishes that Semla possessed the book on the date of the deposition only.  Also there is no evidence in the record that having this book allows Semla to practice his religion.  To the contrary, Semla testified that *Satan's High Witch* or *The Satanic Witch* does not contain the dogmas that the other books had.  The argument that Semla has a general idea of what he can and cannot do consistent with his religion is not well taken.  Would the defendants deny a Bible and religious services to a Christian stating that he can still practice his religion?

Although there is no question that maintaining security is a legitimate interest.  Given the facts and viewing the evidence in the light most favorable to Semla, as the Court must do at this stage, the test for a legitimate restriction has not been satisfied.  There are issues remaining that can only be resolved by a fact finder.

Having found a violation of Semla's rights under the 1st Amendment, the Court must now address whether the right in question was clearly established in July of 2002.  The Court finds that the right to have a reasonable opportunity to exercise ones 1st Amendment right to religious freedom was clearly established in 2002 (see Cruz, Turner, O'Lone, and Al-Alamin,  *supra).*  For the foregoing reasons, this Court cannot recommend that summary judgement be granted for

the defendants on the issue of violations of Semla's 1st Amendment rights.

RLUIPA CLAIM[6]

Defendants argue that Semla's exercise of his religion was not substantially burdened by them.  They argue that federal courts have recognized a compelling government interest in institutional security and order which justify denying Semla the books in question.

The RLUIPA restricts the government from imposing a "substantial burden on the religious exercise of a person residing in or confined in an institution" unless it is in furtherance of a compelling governmental interest and is accomplished by the least restrictive means.  42 U.S.C, §2000cc-1.   RLUIPA requires that the plaintiff establish that the challenged restriction place a substantial burden on the exercise of his religious beliefs.  If he succeeds, the burden shifts to the defendants to show that the restriction furthers a compelling state interest by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (2003); Charles v. Verhagen, 348 F. 3d 601 (7th Cir. 2003). RLUIPA became the law in 2000.   Semla's books were confiscated in 2002.   Forty-two U.S.C. §2000cc-2(b) states that

> "[i]f plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.
> 42 U.S.C. §2000cc-2(b).

Semla has clearly alleged a substantial burden on the exercise of his religion.  The only means he had to practice his religion was by self-study.  When his books were seized, he had no

---

[6] Defendants did not raise the RLUIPA claim in the original Motion for Summary Judgment, however, they have raised it in their Supplemental Motion for Summary Judgment.

13

means to practice his religion.  In the light most favorable to Semla, less restrictive means would be available.  Although the Court agrees with the defendants that Courts have recognized compelling government interest in security and order, the Defendants' argument is not well taken.   Defendants have failed to produce any evidence as to what compelling government interest in institutional security and order was at issue.  RLUIPA affords greater protection to an individual than the 1st Amendment because it restricts the government from imposing a burden on the religious exercise of an incarcerated individual absent a compelling government interest and any policy must survive a strict scrutiny test.   The defendants conclusory statement that they had a compelling interest falls short of meeting their burden of proof.   There is no evidence before the Court of what compelling interest exists or that the defendants used the least restrictive means necessary.   Defendants have offered nothing but conclusions as to why Semla's claims are without merit and deny that they have placed a substantial burden on his ability to practice his religion.   Defendants further argue that the law was not clearly established regarding the RLUIPA.   Additionally, Defendants don't address the issue or Semla's claim that after the confiscation, he was left without any means to practice his religion.  They have offered no evidence of a valid penological objective for seizing Semla's books, or for that matter, no reason why Semla's books were confiscated initially, let alone a compelling interest. Defendants have not met their burden of persuasion.  The Court simply cannot recommend a ruling in defendants favor without evidence of legitimate reasons for confiscating Semla's books. As stated, *supra* (see 1st Amendment) issues remain that can only be resolved by a fact finder. For the foregoing reasons, this Court cannot recommend that summary judgement be granted for the defendants on the issue of violations of Semla's rights under RLUIPA.

## Qualified Immunity

Defendants argue in their Supplemental Motion for Summary Judgment[7] that they are entitled to qualified immunity with respect to Semla's claim for damages.  The defendants argue that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

In order to prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the defense of qualified immunity requires that the official be shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order to decide whether the defendants are entitled to qualified immunity, the Court takes the facts in the light most favorable to the plaintiff and determines whether a constitutional right was violated.  If the facts demonstrate a violation, the Court decides whether the right in question was clearly established at the time the events took place.  Saucier v. Katz, 533 U.S. 194, 200 (2001).

The defendants argue that they are entitled to summary judgement on the issue of qualified immunity because 1.) other courts have recognized a legitimate penological interest in the confiscation of the books taken from Semla; 2.) the taking of Semla's books was a "temporary confiscation"; 3.) the materials confiscated from Semla were destined to be reviewed by the publication review committee; and 4.) non-religious books were taken from Semla at the same time as religious materials were taken.  The Court is not persuaded by those arguments.

---

[7] Defendants did not raise qualified immunity in their original Motion for Summary Judgment, however, they have raised it in their Supplemental Motion for Summary Judgment.

First, in other cases there may have been evidence presented that the confiscation of the effected titles served some penological interest. In the case at bar, the defendants have supplied only conclusions. Additionally, there is nothing in the record before the Court that demonstrates the confiscation of the books from Semla was "temporary." Moreover, even though the books were to be reviewed by the publication review committee there is nothing in the record to demonstrate that Semla was given notification of how long he could expect it to last. As to the issue of review of his books by the publication review committee, Semla was not notified that the publication review committee was reviewing the books until mid-August 2002, which was approximately 6 weeks after the books were seized (Doc. 1 p. 14, 15). There is no evidence in the record that the publication review committee revised their list or that IDOC had changed their policy. In this case Semla's books wound up with the Central Publication Review Committee. There is no limit on the time Central Publication Review Committee had to respond to Semla or anyone else (Doc. 32, Exhibit 3, p. 31). This process was a possible "black hole" for Semla. Last, the Court believes it is irrelevant whether non-religious books were taken from Semla at the same time as religious materials were taken from him. The Court cannot use that fact to build a bridge of logic to support defendants' contention that they are entitled to summary judgement on the issue of qualified immunity. For the foregoing reasons, this Court cannot recommend that summary judgement be granted for the defendants on the issue qualified immunity.

### PERSONAL INVOLVEMENT

Defendants admit that Lt. Jennings did confiscate the books in question during a shakedown of Semla's cell but argue that he should be granted summary judgment because he

was not personally involved in the decision of the Publication Review Committee.

A prison official meets the "'personal involvement' requirement when " 'she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with her knowledge and consent.' " Black v. Lane, 22 f.3d 1395, 1401 (7th Cir. 1994)(citing Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985)).   In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . . ." Gentry v. Duckworth, 65 F. 3d 555, 561 (7th Cir. 1995) (citations omitted).

This Court does not interpret Semla's claim against Jennings as holding him responsible for the decision of the publication review committee.  Semla's claim against Jennings is clear, Jennings should have taken additional steps to ascertain why Semla had the books before confiscating them, i.e., checking with Semla, the Chaplin, master file and offender tracking system.  The only evidence is that he was allowed to have them previously and that the various institutional publication review committees allowed him to have them and that the institutional committees base their decision on a master list put out by the Publication Review Committee.  There is no evidence before the Court that the Publication Review Committee revised their list or that various institutional level committees had not previously approved Semla to possess these books.   The Court finds it plausible that a jury could or could not determine that Lt. Jennings acted with deliberate or reckless disregard for Semla's constitutional rights by failing to take other steps.

Defendants Pierce and Snyder also argue that there is no evidence that they were personally involved.   Defendants Pierce and Snyder further argue Semla's claim against them is

based upon their concurrence with the recommendation of the grievance officer.

Semla testified in his deposition that he "spoke to the Warden" through the Major.  Semla gave a letter to the Major explaining what occurred (Doc. 32, Exhibit 2, p. 15).  The Major gave his letter to the Warden (Id.).  The Major then conveyed to Semla that they were leaving the issue to Springfield. (Id. at 15-16).   Here again, Semla is contesting the original seizure of the books and the fact that no one looked into his religious affiliation, his records, or that the books had previously been approved.   He is also contesting the fact that he indicated in his grievance that the confiscation of his religious books left him without any way to practice his religion. The Court finds it plausible that a jury could or could not find that Defendant Pierce knew about the conduct causing the constitutional violation and turned a blind eye to it.

Defendant Pierce made the final decision.  Semla sent a letter to the Director Snyder and the Administrative Review Board along with his grievance (Doc. 1, p. 16).   However, Donald N. Snyder did not sign the  letter dated October 17, 2002 denying Semla's grievance (Doc. 1, p. 19).   Melody J. Ford, as Snyder's designee, singed the letter.  Semla has not produced sufficient evidence to show that Defendant Snyder was personally involved.  For the foregoing reasons, this Court recommends that summary judgement be granted for Defendant Snyder on the issue of personal involvement and does not recommend that summary judgement be granted for Defendants Jennings and Pierce on the issue of personal involvement.

## INJUNCTION

Defendants argue that Semla, inter alia, seeks injunctive relief and that there is no continuing violation of federal law by any of the defendants.  Specifically defendants Pierce and Snyder argue that they are no longer employed by the IDOC.   However, there has been a

substitution of Roger Walker, Jr. And Jason Garnett in the official capacity claim seeking injunctive relief.  Therefore, the claim survives. For the foregoing reasons, this Court does not recommend that summary judgement be granted for the defendants on the issue of continuing violations of Semla's constitutional rights.

**CONCLUSION**

For the reasons set forth above, it is the **RECOMMENDATION** of this Court that defendants Motion for Summary Judgement (Doc. 31) and Supplemental Motion for Summary Judgement (Doc. 47) be **DENIED IN PART** and **GRANTED IN PART**.  More specifically, Defendants' Lt. Jennings and Guy Pierce Motion for Summary Judgement and Supplemental Motion for Summary Judgment be **DENIED**.  Defendant Donald N. Snyder's Motion for Summary Judgment and Partial Motion for Summary Judgement be **GRANTED**.    Judgement should be entered in favor of Defendant Donald N. Snyder and against the Plaintiff.  Defendants' Jennings and Pierce should proceed to trial.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).


**DATED: March 31, 2006.**

                                                  **s/ Donald G. Wilkerson**
                                                  **DONALD G. WILKERSON**
                                                  **United States Magistrate Judge**