## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMISON L. SEMLA,              )
                                       )
      Claimant,          )
                                       )
      v.                    )     Case No. 03-cv-00015-JPG
                                       )
DONALD N. SNYDER, GUY D. PIERCE, )
and LIEUTENANT JENNINGS,      )
                                       )
      Defendants.     )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on Magistrate Judge Wilkerson's Report and Recommendation ("R&R") (Doc. 55), in which he recommends that this Court deny in part and grant in part defendants' motion for summary judgment. (Docs. 31, 47). Defendants have objected to various parts of the R&R. (Doc. 56). For the following reasons, the Court will accept in part and reject in part Judge Wilkerson's R&R.

## BACKGROUND

The parties have not taken issue with Judge Wilkerson's factual findings, so the Court need not make independent findings or recite the facts with exacting precision. However, a basic understanding of the facts is necessary to understand the substance of defendants' objection. Since 2000, Jamison Semla ("Semla") has been in the custody of the Illinois Department of Corrections ("IDOC") and has served time at several of its institutions. On July 9, 2002, Jennings (an IDOC Lieutenant at the Lawrence Correctional Center) conducted a shakedown of Semla's cell. Semla was not present during the shakedown. In the course of the shakedown, Jennings confiscated a

number of Semla's books, including *The Satanic Bible, Satanic Rituals,* and *Satan Speaks*.  As a member of the Satanic Faith[1], these books are important to his observance of Satanic ritual and practice; apparently, they are the rough equivalent of the Bible for a Christian, or the Koran for a Muslim.  Jennings made no effort to determine whether the books were religious in nature (some books confiscated were not religious, including works in the true crime genre such as *Helter Skelter*), did not discuss the books with Semla, contact the Chaplain or determine Semla's religion through the Offender Tracking System.  Before his transfer to Lawrence, Semla served time at the Stateville Correctional Center.  There, the institutional publication committee reviewed the books at issue here and found them acceptable.  When Semla transferred to Lawrence, officials there inventoried his books, deemed them acceptable and allowed Semla to maintain possession of them.

Semla filed a grievance on the day Jennings confiscated his books.  In the grievance, Semla relayed his status as a Satanist, indicated that he could not study or practice his religion without his books and requested their immediate return.  This grievance was denied at all levels.  Prison personnel sent his books to the Publication Review Committee, which found them inappropriate and declined to return them.  Semla filed the instant action on January 8, 2003.  In his amended complaint (Docs. 1, 40), he requests the return of his books or permission to purchase new ones. He also seeks declaratory and injunctive relief.  Specifically, Semla wants the Court to permanently enjoin defendants' interference with his religious practices and to declare that defendants' activities violated his First Amendment rights and those guaranteed by the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1; he does not seek monetary damages.  Importantly, Semla sued Snyder, Pierce and Jennings in their official and individual

---

[1] Semla's status as a committed Satanist is not in dispute.

capacities. (Doc. 40, ¶¶ 6, 7, 8).

This Court previously adopted, in part, (Doc. 50) Judge Wilkerson's R&R (Doc. 43) on Pierce and Snyder's motion to dismiss (Doc. 21).  In doing so, the Court dismissed Semla's claims against Pierce and Snyder in their official capacities and allowed his claims against them in their personal capacities to proceed.  The Court substituted the current warden at Lawrence, Jason Garnett ("Garnett") and the current director of the IDOC, Roger Walker, Jr. ("Walker"), as defendants in their official capacities.  Thus, at this point, Semla has claims against Pierce and Snyder in their personal capacities, against Jennings in his personal and official capacity, and against Walker and Garnett in their official capacities.

## ANALYSIS

The Court must review *de novo* the portions of the R&R to which the parties object. Fed. R. Civ. P. 72(b).  After reviewing the R&R, the Court may accept, reject or modify, in whole or in part, the judge's findings or recommendations.  *Id*.  In its discretion, the Court may conduct a new hearing, consider the record before the magistrate judge anew or receive any further evidence deemed necessary.  *Id.*  "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In their motion, defendants claim, among other things, that Semla failed to exhaust his administrative remedies and failed to show that defendants were personally responsible for the deprivation of which he complains. In his R&R, Judge Wilkerson accepted defendants' argument with respect to defendant Snyder, and recommended that this Court grant summary judgment in his favor. Wilkerson found sufficient evidence of Jennings and Pierce's personal involvement to

recommend the denial of summary judgment as to them.  Though Pierce and Jennings claim the R&R is "flawed throughout," fundamentally, they only take issue with Wilkerson's determination on the issue of personal involvement.  (Doc. 56 at 2).  Specifically, they claim the R&R is erroneous insofar as it finds that "Jennings and Pierce were personally required to determine whether the Plaintiff could have the books in question before confiscating them, rather than rely upon the publication review committee to make that determination."  (*Id*.).  Essentially, defendants claim Semla should have sued the individual members of the publication committee because if anyone violated his rights, they did it at that end.  This is the cornerstone of their exhaustion claim as well, that Semla should have grieved the Publication Review Committee's decision not to return his books.  This formulation of the precise issue here is defendants' own; clearly, Semla has *attempted* to seek relief based on Jennings' original confiscation and Pierce and Snyder's subsequent denials of his grievance.

### A.    Justiciability

The Court has an independent duty in all cases to determine whether the parties before it have standing and whether their claims are moot. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (standing); *Family & Children's Ctr., Inc., v. Sch. City of Mishawaka*, 13 F.3d 1052, 1058-59 (7th Cir. 1994) (standing); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (mootness).  This duty does not change when some claims are justiciable and others not.  *See, e.g., Robinson v. City of Chicago*, 868 F.2d 959, 967 (7th Cir. 1989).  Because the Court finds that Semla's claims against Snyder and Pierce in their personal capacity are not justiciable, the Court rejects so much of Judge Wilkerson's R&R that suggests otherwise.

The key fact to the justiciability analysis is that Semla has included no claim for money

damages against any of the defendants in this case.  Semla has requested an award of attorney's fees[2], but such a request is insufficient, by itself, to make his claims justiciable.  *See Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) ("[T]he mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (finding that the interest in attorney's fees under federal civil rights statutes is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."); *Liu v. INS*, 274 F.3d 533, 535 (D.C. Cir. 2001).

As previously stated, Semla prays for "preliminary and injunctive relief requiring [defendants] to accommodate [his] Religious Tenet' and practices by returning and the allowance of receiving the Religious Materials unjustly confiscated by [defendants]." (Doc. 40 at 4).  Thus, another key fact in the justiciability inquiry is that Pierce and Snyder have changed their respective positions; Pierce is no longer the warden at Lawrence and Snyder is no longer the director of the IDOC.  Thus, they are no longer in positions which would allow them to comply with the relief Semla requests.  For the same reason, his request for a declaration from this Court that defendants "have violated Plaintiff's rights set forth in the body of [his] complaint" would have little or no cognizable effect.  (*Id.* at 4).  At least as this prayer relates to Snyder and Pierce, the granting of Semla's request for declaratory relief would benefit him in no tangible way.

This Court does not have the power, under Article III, "to decide questions that cannot affect the rights of litigants in the case before [it]."  *Lewis*, 494 U.S. at 477 (quoting *Rice*, 404 U.S. at 246).  That the situation here might have been different when Semla filed suit is not sufficient; "The parties

_____

[2] Semla is proceeding pro se in this action and thus has accrued no attorney's fees.

must continue to have a personal stake in the outcome of the lawsuit." *Id*. at 478 (internal quotations and citations omitted).  Accordingly, where a plaintiff does not pray for damages when he sues a government official in his personal capacity, and that official changes positions during the action's pendency, a claim for declaratory and injunctive relief against such official is often moot, *see Blackburn v. Goodwin*, 608 F.2d 919, 925 (2d Cir. 1979); *Tara Enter., Inc. v. Humble*, 622 F.2d 400, 401 (8th Cir. 1980); *Seriq v. S. Cook County Serv. Corp.*, 581 F.Supp 575, 581 (C.D. Ill. 1984); *see also Commodity Futures Comm'n v. Bd. of Trade*, 701 F.2d 653 (7th Cir. 1983), because the individual no longer has "the official capacity necessary to enable him to comply with the injunctive relief sought." *Blackburn*, 608 F.2d at 925.  In such instances, therefore, a claim for declaratory relief is moot as well.  *Id*.  Semla's request for declaratory and injunctive relief against Pierce and Snyder in their personal capacities is moot for these reasons.

Though the Court need not address justiciability further, it must also note that Semla lacks standing to bring his claims against Pierce and Snyder as well.  To have standing to assert a claim for declaratory or injunctive relief, a plaintiff "must show that he is in immediate danger of sustaining some direct injury." *Robinson v. City of Chicago*, 868 F.2d 959, 966 (7th Cir. 1989) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. 95, 96 (quoting *O'shea v. Littleton*, 414 U.S. 488, 495-96 (1983)).  The plaintiff must show that the defendant is likely to injure him again, *id.* at 105; *Robinson*, 868 F.2d at 966; *see also Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990), and that the relief he seeks is likely to prevent the injury from occurring, *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Simon v. E. Kentucky Welfare Rights Org.*, 426

U.S. 26, 38 (1976). As Pierce and Snyder are no longer in their former positions, they are not currently in a position to injure him again or prevent him from being injured by others again. As such, these claims must be dismissed for lack of standing as well.

### B.     Individual Capacity Claim Against Jennings

The parties have not presented anything which would suggest that Jennings no longer occupies the position he occupied when this case began. Therefore, there is no problem here on mootness or standing. That aside, the Court must address another preliminary matter before addressing defendants' objection. As noted above, Semla sued Jennings in both his individual and official capacities. The substance of defendants' objection deals with Wilkerson's determination on the personal involvement issue. As this issue is only germane to the individual capacity suit, *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (finding that in an official capacity suit, "the entity's policy or custom must have played a part in the violation of federal law.") (citation omitted); *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983), defendants' motion for summary judgment only relates to Semla's individual capacity claim against Jennings.

To state a claim under § 1983, one must show that a defendant was personally responsible for the constitutional violation for which one complains. *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). The statute requires "some causal connection or affirmative link between the action complained about and the official sued." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). A defendant is personally responsible for a constitutional deprivation if he knows about the conduct, facilitates, approves, condones or intentionally ignores it. *Johnson*, 444 F.3d at 583-84 (citing *Gentry*, 65 F.3d at 561). On this issue, Judge Wilkerson essentially found that Jennings failed to

meet his initial burden of demonstrating that there were no genuine issues of material fact.  He emphasized the fact that Jennings presented no evidence whatsoever as to why he seized Semla's books and admitted that he confiscated the books in question.  (Doc. 55 at 11).  He rejected defendants' suggestion that the complained of violation was the decision of the Publication Review Committee; rather, Wilkerson found that Semla's claim against Jennings was predicated on Jennings' failure to take additional steps before confiscating Semla's books.  (Doc. 55 at 18).  Judge Wilkerson determined that Jennings did not make an effort to determine whether the books were religious in nature, did not contact Semla about the books, talk to the Chaplain or attempt to determine Semla's religious beliefs.[3]  He also found it important that the review committees at other institutions had previously approved these books. In sum, he found that a jury could reasonably find that Jennings acted with deliberate or reckless disregard for Semla's constitutional rights.

As this matter comes before the Court on defendants' motion for summary judgment, they bear the burden of establishing that there are no genuine issues of material fact necessitating a trial. *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).  If they fail to meet this burden, the inquiry ends.  Essentially, they argue Jennings bore no responsibility for the Committee's decision to deny the return of Semla's books and that Semla failed to show that Jennings was biased towards him.  Based on this Court's review of the complaint, it is clear that Semla has attempted to state a claim against Jennings for confiscating his books, irrespective of the Publication Review Committee's eventual decision. He alleges (whether he can or has supported this allegation is another matter) that Jennings took the materials because he felt their anti-Christian nature was inappropriate. He also claims Jennings should have taken additional steps before

---

[3]These findings were based on excerpts from Semla's deposition.  (Doc. 32, ex. 2 at 14).

confiscating his books.

Like Judge Wilkerson, this Court finds it significant that Jennings has failed to proffer any reason for confiscating Semla's books. He has similarly failed to tell the Court whether he acted pursuant to an established policy or regulation of the prison or on a whim. Though the record does not include any information on this specific point, the Court must assume that Lawrence allows prisoners to possess books its officials deem acceptable, regardless of how they come to that determination. If this is so, then it would be helpful to the Court to know how the prison deals with prisoner's books once they get past the initial screening. Do prison officials regularly confiscate books from prisoners' cells? Is there an established procedure for removing books or may officials remove books at any time for any reason? Jennings does not answer these questions in his brief. Based on some of the representations in his briefs, the Court can infer that the prison considers some books contraband. If Jennings did indeed determine that Semla's books were contraband, then that would certainly explain his decision to confiscate them. But, if this were so, then Jennings must have evaluated these books to a certain extent to make this determination. If he did indeed determine them to be contraband, his determination would have had to have been based on the content of the books. Again, it bears noting that Lawrence officials (and those at Stateville) had previously determined the books appropriate for Semla's possession. Accordingly, the fact that Semla had books in his cell would be, in itself, unremarkable. Thus, Jennings' failure to provide his reasons for taking the books, or the policy or regulation he acted pursuant to, makes his confiscation without further inquiry perplexing. Did he act in accordance with prison policy? Did the prison institute a new policy? Did IDOC change its policy? The record simply does not provide answers to these questions.

Given the nature of Semla's allegations and Jennings' failure to offer any evidence on the policies and regulations governing these searches, not to mention the lack of evidence as to his subjective motivation, the Court must agree with Judge Wilkerson's conclusion.  Even in the absence of proof on Semla's part, regarding Jennings' bias toward Semla, he has adduced sufficient facts, accepted by Judge Wilkerson and this Court, which would allow a jury to infer that Jennings turned a blind eye toward Semla's particular situation and acted with reckless indifference to his constitutional rights.  *See Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

<u>CONCLUSION</u>

The Court **ACCEPTS IN PART, AND REJECTS IN PART,** Judge Wilkerson's R&R (Doc. 55).  It accepts Judge Wilkerson's findings of fact and conclusions of law except as to his conclusions regarding the liability of Pierce and Snyder. The Court **DISMISSES WITH PREJUDICE** Semla's individual capacity claims against Pierce and Snyder.  As the Court has accepted the R&R otherwise, the Court **DENIES** defendants' motion for summary judgment in all other respects.  For clarity's sake, the following claims remain in this action: Semla's official and individual capacity claims against Jennings and his official capacity claims against Walker and Garnett.  **The Clerk of Court** is **DIRECTED** to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**

**Dated: May 24, 2006.**

         **/s/ J. Phil Gilbert**
         **J. PHIL GILBERT**
         **U.S. District Judge**